IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| **H.L. HAWKINS, JR., INC.,** | § | |
| *Plaintiff/Counter-Defendant,* | § | |
| | § | |
| **v.** | § | **PE:22-CV-00020-DC-DF** |
| | § | |
| **CAPITAN ENERGY, INC. and** | § | |
| **THUNDERHEAD PETROLEUM II, LP,** | § | |
| *Defendants/Counter-Plaintiffs.* | § | |

## ORDER

BEFORE THE COURT is Plaintiff's H.L. Hawkins, Jr., Inc.'s ("Plaintiff") Opposed Motion

to Exclude or Limit Expert Testimony of Lesa Adair and Michael Banschbach (hereafter, "Plaintiff's

Motion to Exclude Adair and Banschbach") (Doc. 49); and Defendants Capitan Energy, Inc.

("Capitan") and Thunderhead Petroleum II, LP's ("Thunderhead") (collectively, "Defendants")

Motion to Exclude or Limit Expert Testimony of Roger Gann and Mia Downing ("Defendants'

Motion to Exclude Gann and Downing") (Doc. 51). This matter is before the undersigned United

States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and

Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate

Judges. After due consideration, Plaintiff's Motion to Exclude Adair and Banschbach shall be

**GRANTED IN PART** and **DENIED IN PART**. (Doc. 49). Further, Defendants' Motion to Exclude

Gann and Downing shall be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 51).

### I. BACKGROUND

This suit's genesis is royalty payments made to Plaintiff ("Plaintiff" or "Lessor") by

Defendants Capitan and Thunderhead (collectively, "Defendants" or "Lessee"). As Plaintiff alleges,

it and Defendants entered into an oil and gas lease (hereafter, the "Lease") covering land in

Culberson County, Texas, in February 2011. The Lease obligated Thunderhead to pay a one-fourth

royalty on the gross proceeds of oil and gas produced. Thunderhead engaged Capitan to "operate

wells, pay oil and gas royalties to [Plaintiff], and perform other obligations under the Lease" on Thunderhead's behalf. Elsewhere, the Lease provided that Plaintiff's royalty "shall not bear or be charged with, directly or indirectly, any post-production costs or expense incurred by [Lessee], . . . save and except for [Plaintiff's] proportionate share of taxes."[1]

Capitan drilled a number of wells pursuant to the Lease and began paying Plaintiff royalties on its production in or around August 2015. In 2020, Plaintiff requested information from Defendants regarding its royalties in order to conduct an audit. Defendants failed to promptly and fully respond to Plaintiff's request. Plaintiff thereafter issued its audit findings based on the information that had been made available; it revealed that Plaintiff "had not been paid all royalties due under the Lease[] because, among other things, gathering and transportation costs were being deducted from [Plaintiff's] royalty." Since the audit, known as the Martindale Report, Defendants have refused to pay Plaintiff all royalties purportedly due under the Lease and "have continued to improperly deduct costs" from Plaintiff's royalty. On November 21, 2022, Plaintiff filed its live First Amended Complaint for breach of contract, a violation of § 91.402 of the Texas Natural Resources Code, and attorney's fees.[2] Defendants have a pending counterclaim against Plaintiff for royalty overpayment and setoff.[3]

On May 5, 2023, Plaintiff filed a Motion to Exclude or Limit Expert Testimony of Lesa Adair and Michael Banschbach (hereafter, "Plaintiff's Motion to Exclude Adair and Banschbach").[4] Defendants filed a Response to Plaintiff's Motion to Exclude, to which Plaintiff filed a Reply.[5]

---

1. (Doc. 35 at 2–3).
2. (*Id.* at 4–6).
3. (Doc. 29).
4. (Doc. 49).
5. (Docs. 53, 55).

On May 11, 2023, Defendants filed a Motion to Exclude or Limit Expert Testimony of Roger Gann and Mia Downing (hereafter, "Defendants' Motion to Exclude Gann and Downing").[6] Plaintiff filed a Response to Defendants' Motion to Exclude, to which Defendants filed a Reply.[7]

The Court held a hearing on the Motions to Exclude on June 21, 2023.[8] The parties have filed motions for partial summary judgment, which are pending before District Judge David Counts. This case is set for a bench trial in October 2023.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 provides the following:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)     the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

Federal Rule 702 requires that experts be "qualified" through "knowledge, skill, experience, training, or education."[9] "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."[10] However, an expert need not be highly qualified to testify, as "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."[11] In this case, the parties do not dispute that all relevant experts are qualified in their fields.[12] The parties only dispute the reliability relevance, and helpfulness of the proffered testimony.

---

6. (Doc. 51).
7. (Docs. 54, 57).
8. (Doc. 64).
9. Fed. R. Evid. 702.
10. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).
11. *Id.*
12. (*See* Docs. 49, 51, 64).

Federal trial judges, under the infamous *Daubert* standard, have an obligation to serve as "gatekeepers" and ensure that expert testimony is both reliable and relevant.[13] The reliability prong of the *Daubert* analysis "mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'"[14] The party offering the expert testimony has the burden of establishing the reliability of the expert's testimony.[15] In *Daubert*, the Supreme Court offered a non-exclusive list of factors for judges to consider in determining reliability: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the theory or technique's operation; and (4) whether the theory or method has been generally accepted in the scientific community.[16] The *Daubert* standard is flexible and the *Daubert* factors may or may not be pertinent to a particular case.[17] Under *Daubert* and Federal Rule 702, judges have "broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion."[18]

Experience, on its own, may qualify an expert's opinion, but the expert's experience must still undergo the separate reliability test.[19] If a proponent does not establish these factors through more than just experience, the Court must exclude the testimony. The relevancy prong of the *Daubert* analysis requires judges to determine if the expert testimony will assist the trier of fact. "To be

13. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) (discussing scientific expert testimony); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147–48 (1999) (extending *Daubert* to all expert testimony).
14. *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)).
15. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016).
16. *See Daubert*, 509 U.S. at 593–94.
17. *Kumho Tire*, 526 U.S. at 150.
18. *Sims*, 839 F.3d at 400 (quoting *Johnson*, 685 F.3d at 458–59).
19. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002); *see also United States v. Evers*, No. 3:19-CR-250, 2021 WL 3710735, at *6, *8–*9 (M.D. Pa. Aug. 20, 2021).

relevant, the expert's 'reasoning or methodology [must] be properly applied to the facts in issue.'"[20] Expert testimony is limited to those situations where "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[21]

The touchstone of the *Daubert* analysis is "whether the expert's opinion will assist the trier of fact."[22] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[23] Credibility determinations remain the province of the trier of fact.[24] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[25]

## III. ANALYSIS

### A.    The Lease and the Experts

According to the Lease, three relevant royalties are to be paid, one each for oil, gas, and other products of the wells. The provisions, with important terms highlighted in bold, read as follows:

(a). **Oil**. Lessee shall pay the Lessor **One-Fourth (1/4)** of the **gross proceeds** of all oil and other liquid hydrocarbons recovered, separated, produced or saved from or on the leased premises and sold by Lessee in an arms' length transaction; provided however, in the event oil and other liquid hydrocarbons are not sold under an arms' length transaction, Lessor's royalty on such oil and other liquid hydrocarbons shall be calculated by using the highest price, plus premium, if any, paid or offered for oil and other liquid hydrocarbons of comparable quality in the general area where produced and when run;

(b). **Gas**. Lessee shall pay the Lessor **One-Fourth (1/4)** of the **gross proceeds** received by Lessee for all gas (including substances contained in such gas) recovered, separated, produced or saved from or on the leased premises and sold by Lessee in an arms' length transaction; provided, however in the event gas is not sold under an arms' length

---

20. *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019) (alteration in original) (quoting *Johnson*, 685 F.3d at 459).
21. Fed. R. Evid. 702(a).
22. *Puga*, 922 F.3d at 293.
23. *Id.* at 294.
24. *See id.*
25. *Daubert*, 509 U.S. at 596.

transaction, Lessor's royalty on such gas (including substances contained in such gas) shall be calculated by using the highest price paid or offered for gas of comparable quality in the general area where produced and when run.

(c). **Products**. Lessee's right to produce substances from the leased premises is limited to substances produced from oil and/or gas wells, and Lessee shall pay Lessor royalty on all marketable substances produced by Lessee from the leased premises (all marketable substances which Lessee may produce from the leased premises hereunder will be collectively referred to as "Products"). It is controlling provided that the price used to calculate Lessor's royalty shall never be less than the price paid Lessee for any Products produced hereunder, and, if the manner of calculating royalty provided for herein would cause Lessor's royalty to be calculated based upon a lesser amount, the price actually paid Lessee shall be substituted as the basis for the royalty calculation. As to any product which does not fall under the oil or gas royalty clauses above, Lessee shall pay **Lessor One-Fourth (1/4)** of the **gross proceeds** received by Lessee for such product in an arms' length transaction; provided, however, in the event the product is not sold under an arms' length transaction, Lessor's royalty shall be calculated by using the highest price paid or offered for the comparable quality of such product in the general area of the leased premises.[26]

The vast majority of this dispute centers on the interpretation of a single provision in the Lease, § 3(e). Section 3(e) reads:

**Royalty to be Free of Expenses**. Lessor's royalty **shall not bear or be charged with, directly or indirectly, any cost or expense incurred by Lessee**, including without limitation, for exploring, drilling, testing, completing, equipping, storing, separating, dehydrating, transporting, compressing, treating, gathering, or otherwise rendering marketable or marketing products, and no such deduction or reduction shall be made from the royalties payable to Lessor hereunder; provided, however, that Lessor's interest shall bear its proportionate share of severance taxes and other taxes assessed against its interest or its share of production.[27]

Defendants' expert Lesa Adair is designated as both a primary and a rebuttal expert, while Mike Banschbach is Defendants' challenged rebuttal-only expert.[28] Plaintiff moves to exclude only part of Adair's opinion and the entirety of Banschbach's opinion.[29]

---

26. (Doc. 51-1 at 16).
27. (Doc. 51-1 at 5).
28. (Docs. 40, 43).
29. (Doc. 49).

Plaintiff's two relevant experts, Mia Downing and Roger Gann, offer primary and rebuttal opinions.[30] Defendants move to exclude their opinions, known as the Martindale Report, in their entirety.[31]

After review of the parties' filings and the applicable case law, the Court held a hearing on June 21, 2023 ("June 21 hearing"). At the hearing, the Court postponed ruling on either of the pending Motions to Exclude, and now **ORDERS** the following:

**B.      Plaintiff's Motion to Exclude Adair and Banschbach (Doc. 49)**

Plaintiff's Motion to Exclude Adair and Banschbach is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 49). Plaintiff makes several arguments for the exclusion of Adair and Banschbach, claiming that they: (1) improperly attempt to construe the Lease; (2) provide legal conclusions by "seek[ing] to vary or contradict the [L]ease language"; and (3) improperly speculate about the parties' intent.[32] As noted below, the Court does not construe § 3(e) at this juncture. Each party still disputes whether the challenged opinions are improper as a matter of law, specifically citing the inability of an expert to opine on legal conclusions or other areas outside the scope of permissible expert testimony. These arguments will be discussed after a brief but necessary summary of contract interpretation in Texas.

**1.      Contract Interpretation in Texas Generally**

To understand the complexity of oil and gas leases, and experts' particular role in interpreting them, the Court must survey Texas oil and gas contract law. "An oil and gas lease is a contract, and its terms are interpreted as such."[33] Where a contract is unambiguous, under Texas law, the Court interprets and decides the meaning of its provisions as a matter of law.[34] "In construing an

---

30. (Doc. 39).
31. (Doc. 51).
32. (Doc. 49 at 6, 7, 8).
33. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 210 (Tex. 2011) (citation omitted).
34. *W&T Energy VI, LLC v. Dauphin Island Gathering Partners*, No. 4:14-CV-02323, 2015 WL 7406748, at *4 (S.D. Tex. Dec. 22, 2016).

unambiguous lease, [the Court's] primary duty is to ascertain the parties' intent as expressed within the lease's four corners."[35] Thus, in the ordinary case, "the writing alone will be deemed to express the intention of the parties."[36]

In this ordinary case, the Court is to "read all parts of the lease together to harmonize and give effect to all the provisions so no provision is rendered meaningless, and [] use the lease language's plain, grammatical meaning unless doing so would clearly defeat the parties' intentions."[37] Any testimony on the meaning of contracts ordinarily need not be considered, for "*[o]nly where a contract is first found to be ambiguous may the courts consider the parties' interpretation*."[38] Thus, expert testimony on the meaning of terms in an unambiguous contract is *generally* not allowed, subject to a couple of exceptions outlined below. Nevertheless, if the parties agree that a contract is unambiguous, the Court may still conclude that it is ambiguous.[39]

On the other hand, where a contract is ambiguous, the Court utilizes "well-established rules of construction to resolve conflicts in contract provisions."[40] One such rule is the rule of the last antecedent, under which "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows."[41] The doctrine applies to a qualifying phrase that follows words or phrases and that purports to "qualify, limit, or restrict" some aspect of the

---

35. *Vermillion FC, LP v. 1776 Energy Partners, LLC*, No. 04-20-00089-CV, 2021 WL 3743514, at *4 (Tex. App.—San Antonio Aug. 25, 2021) (mem. op.) (citation omitted).
36. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 728 (Tex. 1981).
37. *Vermillion FC*, 2021 WL 3743514, at *4.
38. *Sun Oil*, 626 S.W.2d at 732 (emphasis added).
39. *Comm'r of the Gen. Land Off. of Tex. v. SandRidge Energy, Inc.*, 454 S.W.3d 603, 612 (Tex. App.—El Paso 2014) (no pet.); *see Coker v. Coker*, 650 S.W.2d 391, 394–95 (Tex. 1983) (reversing judgment of trial court that had found agreement to be unambiguous despite conflicts within agreement, which the Texas Supreme Court said created ambiguity); (*see also* Doc. 54 at 2 (Plaintiff acknowledging that different interpretations may yield finding of ambiguity)).
40. *Sefzik v. Mady Dev., L.P.*, 231 S.W.3d 456, 462 (Tex. App.—Dallas 2007) (no pet.).
41. *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003); *OHA Inv. Corp. v. Schlumberger Tech. Corp.*, 888 F.3d 122, 128 (5th Cir. 2018); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 144 (2012).

sentence.[42] As a matter of grammar, this rule is not absolute, but is instead sensibly applied to methods of construction where no "other indicia of meaning" are present.[43]

In summation, "[i]f contract language can be given a certain or definite meaning, then it is not ambiguous."[44] "At the same time, ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; for an ambiguity to exist, both interpretations must be reasonable."[45] In this case, the parties advance conflicting interpretations centered on whether indirect post-production costs can be charged to Plaintiff's royalty under the terms of § 3(e). Thus, even if the contract is agreed to be unambiguous, the substantive question for the Court becomes one of whether the parties' conflicting interpretations are reasonable while not rendering any portion of the contract meaningless.[46] The parties wish for this Court to admit only their own interpretation of seemingly unambiguous terms. This debate, advanced by each party as the essence of their motions, will be addressed first.

### 2.   Expert Testimony on Contract Provisions and Ambiguity Determination

#### i.  Standard

As a preliminary matter, "[e]xperts cannot offer testimony regarding what law governs a dispute or what the applicable law means, because that is a function of the Court."[47] *Counsel* themselves are allowed to offer legal arguments and "urge the Court to reach certain legal conclusions," not a party's experts.[48] Proffered experts, therefore, should generally bring to the trier of fact "more than the lawyers can offer in argument."[49] Here, the parties do not dispute that experts generally cannot opine on legal questions.[50]

---

42. *See Tecore, Inc. v. Airwalk Commc'ns, Inc.*, 418 S.W.3d 374, 388 (Tex. App.—Dallas 2013, pet. denied).
43. *Barnhart*, 540 U.S. at 26.
44. *Univ. Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 741, 746 (Tex. 2003).
45. *SandRidge Energy*, 454 S.W.3d at 612.
46. *Id.*
47. *Dickson v. Bosworth Co., Ltd.*, No. MO:21-CV-009-DC, 2022 WL 1523490, at *4 (W.D. Tex. May 13, 2022).
48. *Smith v. City of Bastrop*, No. 1:19-CV-1054-RP, 2021 WL 148061, at *6 (W.D. Tex. Jan. 15, 2021).
49. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).
50. *Dickson*, 2022 WL 1523490, at *4.

There is at least one exception to the general rule. Experts are sometimes allowed to testify "about the proper interpretation of contract terms—an issue of law—when the meaning depends on trade practice," even where a contract is unambiguous.[51] In particular, where an expert may ordinarily be prohibited from opining on the meaning of a term in an unambiguous contract, an extant need to clarify "any terms of art, science or trade" may grant passage to the testimony.[52] Terms of art, science, trade, or other subject on which an expert may opine in such situations typically are those terms which the trier of fact, here the Court, would be unable to easily understand and interpret. This exception is oftentimes utilized in the oil and gas context, which naturally involves many technical terms.[53]

Another but related exception for otherwise inappropriate expert testimony concerns "customs, standards, and practices" in a given industry.[54] Notwithstanding these two exceptions, extrinsic evidence cannot be used to create an ambiguity where none otherwise exists.[55]

In this case, the parties do not dispute the existence of a contract, nor do they disagree that § 3(e) is the only section of the Lease relevant to the pending expert motions. Thus, resolving this case—and not only the expert motions—requires that the Court follow a two-step analysis. First, the Court is to construe the Lease to determine whether it is ambiguous.[56] If it is ambiguous, the Court can invoke expert testimony if applicable to determine the meaning of any ambiguous terms. If it is unambiguous, meaning that the parties' interpretation should be disregarded save for the two exceptions, or if the Court finds the Lease ambiguous and defines any ambiguous terms as a matter

51. *Mt. Hawley Ins. Co. v. JBS Parkway Apartments, LLC*, No. MO:18-CV-00092-DC, 2020 WL 6821329, at *4 (W.D. Tex. Oct. 5, 2020).
52. *Coregis Ins. Co. v. Bell*, No. CIV. A. 96-2502, 1999 WL 244097, at *1 (E.D. La. Apr. 21, 1999), *aff'd* 203 F.3d 828 (5th Cir. 1999); *see also Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000).
53. *See, e.g.*, *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 281 (5th Cir. 1987).
54. *See First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 138 n.2 (5th Cir. 1996); *Beneplace, Inc. v. Pitney Bowes, Inc.*, No. A-15-CV-65-LY-ML, 2016 WL 11582931, at *4 (W.D. Tex. Sept. 20, 2016).
55. *Gen. Star Indem. Co. v. Sherry Brooke Revocable Tr.*, 243 F. Supp. 2d 605, 620 (W.D. Tex. 2001).
56. *Sun Oil*, 626 S.W.2d at 727–28.

of law, the Court, as the trier of fact in this case, then moves to the second step to determine what costs, if any, burden Plaintiff's royalties under the Lease.[57]

Importantly, the parties agree that the Lease, including § 3(e), is unambiguous. This however is not a foregone conclusion as the parties suggest and will be discussed below. At this time, the primary substantive dispute before the Court therefore concerns whether § 3 is ambiguous, which will inform § 3(e)'s meaning. Then, if damages are owed, finding the amount of such would be epiphenomenal. At this stage, the question is whether the proffered expert testimony is helpful and relevant to inform any of these determinations.

The Court has yet to make any of these substantive determinations, but the parties request that their opponents' experts' testimony on the interpretation and meaning of § 3 be excluded. If the Lease is ambiguous, testimony as to § 3(e)'s meaning may be warranted; if not, testimony limited to the two aforementioned exceptions may still be helpful. Damages calculations may also inform the Court's eventual conclusions. Thus, only the testimony that would be improper *regardless* of whether § 3(e) is ambiguous or unambiguous will be excluded at this time.

## ii.  Analysis

As to § 3(e)'s meaning, the parties agree that non-post-production costs, or more simply "production costs,"[58] are not charged to Plaintiff, whether they are directly or indirectly incurred by Capitan. The parties also do not dispute that post-production costs[59] incurred *directly* by Capitan *cannot* burden Plaintiff's royalty. Thus, there is but one primary issue in uncovering the meaning of § 3(e): whether post-production costs *not directly incurred* by Capitan, as the well operator, can

---

57. *Id.* at 732–33.

58. These are costs incurred before and up to production, "are the expenses incurred in exploring for mineral substances and in bringing them to the surface," and are distinct from *post*-production costs. *Cartwright v. Cologne Prod. Co.*, 182 S.W.3d 438, 444 (Tex. App.—Corpus Christi 2006, pet. denied).

59. Post-production costs are all other costs and can otherwise be defined by the contracting parties in "any way they choose." *Burlington Res. Oil & Gas Co. LP v. Tex. Crude Energy, LLC*, 573 S.W.3d 198, 203 (Tex. 2019). These costs typically "include taxes, treatment costs to render the minerals marketable, and transportation costs." *Devon Energy Prod. Co., L.P. v. Sheppard*, 643 S.W.3d 186, 194 (Tex. App.—Corpus Christi-Edinburg, 2020), *aff'd Devon Energy Prod. Co., L.P. v. Sheppard*, No. 20-0904, -- S.W.3d -- , 2023 WL 2438927 (Tex. Mar. 10, 2023).

burden Plaintiff's royalty, or put differently, whether indirect post-production costs are chargeable to Plaintiff. Plaintiff argues that they are not; Defendants, on the other hand, believe they are.

Moving to the first step of the analysis, importantly for the pending expert motions, the Court need not reach at this stage the issue of how to definitively construe § 3(e) or determine whether it is ambiguous. This is typically a matter for the Court to decide on summary judgment or at trial, which the parties acknowledged at the June 21 hearing.[60] Even though the parties believe the Lease is unambiguous, thereby precluding most expert testimony with but two exceptions, the Court will not now determine the Lease to be ambiguous or unambiguous. Were the Lease indeed unambiguous, testimony may only be introduced as to industry customs, practices, or specialized technical terms. Were § 3(e) is ambiguous,[61] the scope of admissible expert testimony would be expanded. The Court finds it best to postpone making this determination—one party's construction of the Lease could conceivably allow for testimony concerning its interpretation at summary judgment. But if District Judge David Counts at summary judgment or at trial finds that § 3(e) warrants a different construction, the Court will have already excluded the testimony. The Court should not exclude the opinions for this very reason.[62]

It therefore would be improper to preclude such testimony before the Court finally determines whether the Lease is ambiguous. On the instant Motions to Exclude, the only issue to be decided is whether the challenged expert opinions are helpful, reliable, and relevant to the claims before the Court. As a result, any opinions which actually pertain to the meaning of terms in § 3(e),

---

60. *See GDC Technics v. Grace*, No. SA-15-CV-488-RP, 2017 WL 11022077, at *7 (W.D. Tex. Feb. 16, 2017) (postponing determination of ambiguity as a matter of law to trial); *see also Aperia Sols, Inc. v. Evance, Inc.*, No. 3:18-CV-03276-X, 2021 WL 1171870, at *3 (N.D. Tex. Mar. 29, 2021) (declining to determine ambiguity of contractual terms until trial); (Docs. 64; 57 at 2 n.1 (Defendants in support of their own motion foreshadowing that "Lease interpretation and the legal standards the Court must apply when interpreting the Lease will be further addressed in Defendants' . . . motion for summary judgment")).

61. As noted above, the Court can still find a contract provision to be ambiguous even where the parties do not dispute its unambiguity. *See, e.g.*, *Coker*, 650 S.W.2d at 394–95.

62. Plaintiff acknowledges with this conundrum in its Response to Defendants' Motion to Exclude Gann and Downing, discussed below. (Doc. 54 at 5).

including opinions on industry custom, practice, or trade, or specialized terms, are not to be excluded at this time.[63] The parties offer no authority for making a preemptive ambiguity determination.

Plaintiff's arguments that Defendants' experts "attempt to use customs, standards, and practices to alter the plain language of the Lease" are similarly of no avail.[64] Plaintiff characterizes the Lease as unambiguous, and that some of its terms, including "incur" and "gross proceeds," are "not [] term[s] of art in the oil and gas business."[65] Under this theory, Adair and Banschbach's opinions would thus not fall within the specialized or industry terminology exceptions to unambiguous contract interpretation. Excluding the opinions on these grounds alone at this stage, however, again presupposes the Court's determination that the contract is unambiguous. It has not yet done so. The Court presently believes that "gross proceeds" and similar terms are potentially terms of art in the oil and gas industry, and therefore could be subject to expert testimony as to their meaning if the Lease is determined to be ambiguous.[66] Excluding testimony on these terms pre-ambiguity finality is premature.

In sum, although interpretation of the Lease is indeed a question of law for the Court's exclusive decision, there is no requirement that it be interpreted and construed as to the parties' legal obligations on a Federal Rule 702 motion prior to summary judgment or trial. The parties have not pointed to any authority implying otherwise. Instead, the parties each argue that their experts provide *some* interpretation as to the construction of § 3(e), meaning that their reports *could assist* the Court in definitively construing the Lease as a matter of law in resolving the pending motions for summary

---

63. *See Transocean Offshore Deepwater Drilling, Inc. v. Noble Corp. PLC*, 451 F. Supp. 3d 690, (S.D. Tex. 2020); *see also N. Wind Const. Servs., LLC v. Campos EPC, LLC*, No. 4:21-cv-00096-DCN, 2023 WL 196618, at *4 (D. Idaho Jan. 13, 2023) (finding proffered opinion to be relevant because "extrinsic evidence like expert testimony may be useful in determining whether terms are used as industry terms of art").
64. (Doc. 55 at 2).
65. (*Id.*).
66. *Devon Energy*, -- S.W.3d -- , 2023 WL 2438927, at *11.

judgment.[67] As such, and in an abundance of caution, the Court will not currently exclude testimony leaning to the interpretation of the Lease.

As an additional concern, because the case will head to a bench trial, any concerns about the undue weight of expert testimony will be severely alleviated.[68] Thus, in a bench trial, the trial court's jury "gatekeeping" role is minimized due to the absence of a jury.[69] Federal district courts routinely utilize this approach, allowing the evidence "to be presented in the context of trial, 'where a full foundation, vigorous cross-examination, and the presentation of contrary evidence can more fully enlighten the Court with regard to the value of an expert's opinion.'"[70] Plaintiff at the June 21 hearing did not provide a reason why the Court must determine whether the § 3(e) is ambiguous at this juncture, prior to the Court's resolution of the pending summary judgment motions.[71] There is plainly no reason to interpret or construe the Lease at this stage.[72] Therefore, to the extent that Adair or Banschbach's opinions offer any testimony on the meaning or interpretation of certain terms, their testimony should not be excluded on this ground. The Court can, at a later point in time, then give their testimony "whatever weight it deserves" without risking unduly tainting the trier of fact, which in this case is itself.[73]

Accordingly, to the extent that Plaintiff seeks to exclude evidence which interprets or construes the language or meaning of the Lease, the Motion to Exclude Adair and Banschbach is **DENIED**. (Doc. 49).

---

67. (Docs. 49 at 3; 53 at 6; 54 at 2).
68. *See Stringer v. Pablos*, No. SA-16-CA-257-OG, 2017 WL 11638257, at *1 (W.D. Tex. Nov. 14, 2017) ("[B]ench trials allow far greater flexibility to hear the testimony at trial and then give the evidence whatever weight it deserves.").
69. *See id.*; *see also Whitehouse Hotel Ltd. P'ship v. C.I.R.*, 615 F.3d 321, 330 (5th Cir. 2010) ("[T]here being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence.").
70. *Stringer*, 2017 WL 11638257, at *1 (quoting *In re Sunpoint Secs., Inc.*, Nos. 99-6073, 01-6079, 2006 WL 6650385, at *1 (Bankr. E.D. Tex. Sept. 26, 2006)).
71. (*See* Doc. 64).
72. *See Honeywell Int'l, Inc. v. Opto Elecs. Co., Ltd.*, No. 3:21-CV-00506-KDB-DCK, 2023 WL 3029264, at *15 (W.D.N.C. Apr. 20, 2023) (noting that the trial court in a bench trial has discretion "to admit the expert evidence subject to the ability later to exclude it or disregard it" (quotation marks omitted)).
73. *Stringer*, 2017 WL 11638257, at *2.

### 3.      Legal Conclusions

The preliminary matter of appropriate construction of the Lease aside, Plaintiff contends that

Adair and Banschbach's opinions (1) are legal conclusions and (2) lack relevancy and reliability.[74]

The standard for expert testimony on legal conclusions is set forth above.

Banschbach's report, a rebuttal to the Martindale audit Report, is scarcely quoted; only a

couple of lines from his deposition testimony are referenced. At the June 21 hearing, Plaintiff

clarified that it is challenging Banschbach's opinions regarding certain findings in Plaintiff's audit,

known as "exceptions."[75] These opinions concern Capitan's payment of royalties to Plaintiff after

deducting costs related to transactions with third parties:

> 1) Regarding audit exception # 1, **Capitan is correct** in deducting the Kinetik crude oil gathering fee and therefore no additional amounts are due. In addition, to the extent Capitan has not been deducting the Kinetik crude oil gathering fee, **Capitan should immediately begin** once again deducting that fee prior to paying royalty.
>
> 2) Regarding audit exception #3, **Capitan was correct** in paying royalty on the price received from its crude purchasers when crude was sold via tank truck and therefore no additional amounts are due.
>
> 3) Regarding audit exceptions #6 and #9, **Capitan is correctly** remitting royalty on proceeds it receives from Capitan's gas purchaser for NGLs and residue gas under an arms-length transaction and therefore no additional amounts are due.
>
> 4) Regarding audit exception #7, **Capitan is correctly** remitting royalty on proceeds it receives from Capitan's gas purchaser under an arms-length transaction, after that purchaser has deducted the contractually-allowable fuel and loss, and therefore no additional amounts are due.
>
> 5) Regarding audit exception #8, **Capitan has correctly** valued flared gas using the residue gas price paid Capitan by its gas purchaser under an arms-length transaction and therefore no additional amounts are due on flared gas. Since Capitan is allowed by the Lease to use gas on-lease, no additional amounts are due on lease use gas, and Capitan should immediately cease paying royalty on lease-use gas.
>
> 6) The Report states on page 10 that Capitan "did not deduct costs in the form of value-based fees charged by the gas plant processors for compression, gathering, processing, electricity, etc." (which are fees labeled as such on the gas settlement statements);

---

74. (Doc. 49 at 5).
75. (*See* Doc. 52-1).

**Capitan should have been deducting** these fees from royalty on gas production and should immediately begin doing so.[76]

To the extent that any expert attempts to opine on whether post-production costs *can* be borne in part by Plaintiff as a matter of law, their opinion must be stricken. As to Banschbach's opinions specifically, each of the bolded portions in the above opinions denotes a legal conclusion, impermissible under Federal Rule 702. It is not convincingly stated that an opinion that Capitan was "correct" means anything other than an opinion as to whether a given action is or was *legally* correct under the Lease. Relatedly, opinions that Capitan "should have been" making certain deductions clearly concerns the Lease's legal implications, as the relevant exceptions in the Martindale Report state, for example, "Capitan did not comply with the . . . Lease provisions."[77] Experts are not permitted, whether a contract is ambiguous or unambiguous, to opine on a contract provision's legal requirements or a party's compliance with such requirements.[78] These instances in Banschbach's report should therefore be stricken. The remainder of Banschbach's challenged opinions, on this ground, merely state facts about whether Capitan indeed did remit certain royalties and are allowed.

Plaintiff's other arguments are not quite as successful. The challenged portions of Adair's opinions are as follows:

Capitan does not incur post-production costs for crude oil and remitted oil royalties based on the gross proceeds received from sales that occurred at or near the wellhead.

(App. 015, Adair Original Report, at 7(a); App. 061, Adair Rebuttal Report, at 9(a)).

Custom and practice in the industry dictates that crude oil delivered at or near the wellhead trades or is priced on formulas that reflect adjustments for value differences between trading locations and the crude oil delivery point.

(App. 015, Adair Original Report, at 7(e)).

Custom and practice in the industry dictates that residue gas and plant products delivered at gas processing facilities trade or are priced based on formulas that reflect

---

76. (Doc. 49-1 at 43–44).
77. (Doc. 52-1 at 15).
78. *See Jacobson Warehouse Co. v. Schnuck Mkts., Inc.*, No. 4:17-CV-00764 JAR, 2019 WL 2612712, at *5 (E.D. Mo. June 25, 2019).

adjustments for value differences between trading locations and the gas processing facilities.

(App. 015 Adair Original Report, at 7(g); App. 061, Adair Rebuttal Report, at 9(e)).

Capitan sells residue gas and plant products at the gas processing facility and does not incur post-production costs for residue gas or plant products downstream of the gas processing facility. (App. 015, Adair Original Report, at 7(h)).[79]

As to Adair's opinions, it appears that the quoted portions of Adair's opinions do not opine, at least on their face, as to the legal availability of post-production costs being borne by Plaintiff as Lessor.[80] Instead, the cited portions of the opinions appear to opine on whether and at what point postproduction costs are incurred as a matter of fact by Defendants. Going to the factual issue of whether Defendants charged Plaintiff, and at what point, this is permissible expert testimony.

Plaintiff does little to otherwise quote any specific legal conclusions in Adair's reports, only noting such things as how they "draw conclusions as to the parties' obligations under the lease . . . and determine whether the parties met those legal obligations."[81] But Plaintiff does not point to a particular sentence or phrase which would present a legal conclusion; as stated, the portions Plaintiff cites on their face seem to demonstrate how gas and oil are priced in the industry—which "reflect adjustments for value differences between trading locations" and the crude oil delivery point and gas processing facilities. The opinions additionally state that Capitan "does not incur post-production costs . . . downstream of the gas processing facility" and that it "remitted oil royalties based on the gross proceeds received from sales that occurred at or near the wellhead."[82] Neither of these appear to be legal conclusions; in fact, they do not opine on Lease obligations, legal requirements or similar, but rather state facts about industry practices and customs as well as Capitan's own post-production costs based on sales of gas and oil products. There is scant mention of which costs are or are not

79. (Doc. 49 at 3).
80. (*See* Docs. 50; 49-1).
81. (Doc. 49 at 6).
82. (Doc. 49 at 3, 6).

"allowed" under § 3(e) of the Lease. This determination, a question of law for the Court, would clearly be beyond the permissible scope of any expert's testimony. No such impermissible opinion of Adair's appears here. Adair's challenged opinions are therefore not impermissible on this ground.

Therefore, Plaintiff's Motion to Exclude Adair and Banschbach is **GRANTED** as to Banschbach's challenged opinions concerning whether Capitan was "correct" in remitting certain royalties as well as those opinions concerning whether Capitan "should have" or "should begin" deducting certain fees. (Doc. 49). The offending language is hereby **STRICKEN**, and the Court will not consider any of Banschbach's legal conclusions.[83] As to Adair's challenged opinions, Plaintiff's Motion to Exclude Adair and Banschbach is **DENIED** on this ground. (Doc. 49).

### 4.    Opinions on Intent

Plaintiff also asserts that Adair and Banschbach's opinions "speculate about the parties' subjective intent" in drafting the Lease.[84] "[An] expert's credentials do not place him in a better position than the [trier of fact] to draw conclusions about a defendant's state of mind."[85] Conclusory such assertions "are not helpful or admissible."[86] Therefore, experts are "barred from opining about an individual's state of mind."[87] In this case, Plaintiff states that the opinions "seek to substitute" the Lease's plain language with "their perceived notions of industry custom and practice."[88] Interpretation of an unambiguous contract, such as the one before the Court, is not to be informed by extrinsic evidence of the parties' subjective intent.[89]

---

83. *Musket Corp. v. Suncor Energy (U.S.A.) Mktg., Inc.*, No. H-15-100, 2016 WL 7374225, at *3 (S.D. Tex. Dec. 20, 2016).
84. (Doc. 49 at 7).
85. *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007) (unpublished).
86. *Id.*
87. *McLane Co. v. ASG Techs. Grp. Inc.*, No. 6:17-CV-00166-ADA-JCM, 2019 WL 590081, at *8 (W.D. Tex. Jan. 2, 2019).
88. (Doc. 49 at 7).
89. *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 764–65 (Tex. 2018).

In this case, Plaintiff, aside from saying that Banschbach "admitted" in a deposition that he did not know of the parties' intent "other than what is expressly set forth in the lease,"[90] Plaintiff does not point to any particular line or opinion of either Adair or Banschbach that opines on intent and does not explain what intent any opinion purportedly offers. The opinions do not themselves appear to provide testimony on intent. Plaintiff did not offer clarification at the hearing.[91] With no referenced opinion which should be stricken for opining on the parties' intent, the Court cannot grant relief. Therefore, Plaintiff's Motion to Exclude is **DENIED** on this ground. (Doc. 49).

**5.       General Reliability**

Plaintiff also appears to assert an argument questioning Adair and Banschbach's general reliability. In stark contrast to Plaintiff's arguments that "none" of Adair or Banschbach's challenged opinions "rely on specific experience or knowledge,"[92] Adair herself states that she has plenty of expertise in the fossil fuels field, on which she relied in giving her opinion on industry customs.[93] Banschbach has evidently a broad level of experience in the oil and gas field as well.[94] This is the prime field for their permissible expert testimony, and Plaintiff does not discuss how this experience is insufficient to explain whether, how, and when certain costs are deducted from Plaintiff's royalty. Therefore, Plaintiff's Motion to Exclude Adair and Banschbach is **DENIED** on this ground. (Doc. 49).

**6.       Objections to Plaintiff's Appendix**

Defendants object to certain parts of Plaintiff's Appendix 099–116, attached to Plaintiff's Motion to Exclude Adair and Banschbach. They claim that those portions are "an impermissible

---

90. (Doc. 49 at 7).
91. (Doc. 64).
92. (Doc. 49 at 6)
93. (Doc. 50 at 12).
94. (Doc. 49-1 at 43).

attempt to prejudice the Court against Adair by innuendo and to circumvent the Local Rules limiting responses to non-dispositive motions to 10 pages."[95]

Appendix 099–116 showcases a motion to exclude testimony by Adair in a different case, which was denied at the state court level.[96] Texas state courts do not adhere to the Federal Rules of Evidence.[97] Therefore, the reasoning which the state court may have followed in excluding Adair's opinion in the other case is inapplicable here. Further, it is clearly offered in this case in an effort to showcase the impropriety of Adair's opinion, despite Plaintiff's urging of "context."[98] The state court case involved different parties, contracts, and facts. Even if Federal Rule 702 were somehow applied there, the posture and facts of this case would require a fresh review in determining whether Adair's opinion can be admitted. Plaintiff's claim that the state court order gives "context" to the instant motions therefore has no bearing. Accordingly, Defendants' objection is **SUSTAINED** and Plaintiff's Appendix Pages 099–116 are hereby **STRICKEN** from the record. (Doc. 49-1 at 21–38.)

**C.  Defendants' Motion to Exclude Gann and Downing (Doc. 51)**

Defendants' Motion to Exclude Gann and Downing is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 51). In Defendants' Motion to Exclude Gann and Downing, involving the Martindale Report, Defendants argue for a slightly different albeit similar basis for excluding Plaintiff's experts. In large part, Defendants' motion relies on the Court's finding that, as is relevant to Plaintiff's motion, "directly or indirectly" modifies "cost or expense."[99] But further with Defendants' motion, Defendants maintain that any cost or expense to be non-chargeable to Plaintiff's royalty must have been incurred by themselves as Lessee, and not by third parties.[100]

---

95. (Doc. 53 at 8).
96. (Doc. 49-1 at 21–38, 40).
97. *Gonzalez v. Inter Mexicana De Transporte S.A. v. C.V.*, No. 5:19-CV-156, 2021 WL 3821048, at *3 (S.D. Tex. Apr. 22, 2021) (discussing differences).
98. (Doc. 55 at 3).
99. For ease of access, § 3(e) reads relevantly as follows: "Lessor's royalty shall not bear or be charged with, directly or indirectly, any cost or expense incurred by Lessee."
100. (Doc. 51 at 9).

1.      **Lease Interpretation**

As with Plaintiff's Motion to Exclude Adair and Banschbach above, the Court will not

determine whether the Lease is ambiguous at this juncture. Therefore, to the extent that the

Martindale Report offers any testimony on the meaning or interpretation of certain terms, the

testimony should not be excluded on this ground. Accordingly, where Defendants seek to exclude

testimony interpreting the language or meaning of the Lease, the Motion to Exclude Gann and

Downing is **DENIED**. (Doc. 51).

2.      **Legal Conclusions**

Defendants' first argument is that the Martindale Report and its subsequent rebuttals are

unhelpful to the trier of fact because it contains legal conclusions. The audit provisions cited as

inappropriate, with Defendants' citations and relevant discussion provided, are as follows:

> Lease paragraph 3.(e) further indicates that royalties are to be free of expenses, direct
> or indirect, except for and only taxes. Once the point of royalty valuation is determined
> then all the costs incurred, direct and indirect, are subject to 3.(e). Accordingly, **the**
> "**free of expenses" language coupled with the use of "gross proceeds" establishes**
> **that royalties are to be free of all costs** prohibiting any direct or indirect deductions
> from royalties.

> (App 010, Martindale Expert Report, at 9; emphasis added to all excerpts from the
> report).

> Plaintiff relies on this construction of § 3(e) throughout their report. For example:

> "Applying this three-step approach demonstrates that **royalties should be free of any**
> **deductions** (other than taxes) for costs and expenses incurred to the downstream of the
> point of sale.

> … [G]athering, compressing, transporting, and processing costs are costs to market the
> production. The **deduction of such costs from royalty payments to Hawkins is**
> **specifically disallowed under Lease provision 3.(e)** which states royalties are free
> from expenses, except for taxes."

> (App 010, Martindale Expert Report, at 9).

> An indirect deduction would be fees or costs implicitly deducted through a price
> reduction, whether from Capitan or a third-party service provider.

> (App 010, Martindale Expert Report, at 9).

> "Capitan **did not comply with the no deduct Lease provisions** by deducting oil gathering fees, minimum volume commitment fees, and transportation fees from oil royalties."

(App 010, Martindale Expert Report, at 10).[101]

Each of the challenged portions of the Martindale Report reproduced above in bold denotes some legal conclusion. Specifically, the statements either denote conclusions about the obligations established by § 3(e), Capitan's compliance with these obligations, or the legal landscape surrounding royalties. These legal conclusions invade the province of the Court and must be stricken.[102]

However, the bolded statement that "Capitan did not comply with the no deduct Lease provisions by deducting . . . " can be reasonably interpreted as signifying, essentially, that "Capitan . . . deduct[ed]" certain costs. The inclusion of the legal conclusion that Capitan failed to *comply* with the Lease should be stricken, but the opinion that Capitan did not as a matter of fact deduct certain production costs from Plaintiff's royalties could prove to be permissible and helpful evidence to the Court as a counter to Defendants' own expert opinions, particularly those of Adair, that Capitan did not in fact deduct any such costs. Therefore, only the phrase "did not comply with the no deduct Lease provisions" should be excluded on this ground. The remaining bold statements should also be excluded on this ground. In sum, the following legal conclusions, denoted in bold, are to be excluded:

> Lease paragraph 3.(e) further indicates that royalties are to be free of expenses, direct or indirect, except for and only taxes. Once the point of royalty valuation is determined then all the costs incurred, direct and indirect, are subject to 3.(e). Accordingly, **the "free of expenses" language coupled with the use of "gross proceeds" establishes**

---

101. (Doc. 51 at 3–4).
102. *Accresa Health LLC v. Hint Health Inc.*, No. 4:18-cv-00536, 2020 WL 6325731, at *4 (E.D. Tex. Feb. 26, 2020) (noting that the "narrow exception" to the Federal Rules of Evidence's permission to expert witnesses to testify on "ultimate issues of fact" is that "experts may not provide conclusions of law as opinions"). On the other hand, the underlined portion could be interpreted as merely stating the ordinary meaning of "indirect deduction" in the industry, which, as Defendants state, is permitted under Federal Rule 702.

**that royalties are to be free of all costs** prohibiting any direct or indirect deductions from royalties.

"Applying this three-step approach demonstrates that **royalties should be free of any deductions** (other than taxes) for costs and expenses incurred to the downstream of the point of sale.

… [G]athering, compressing, transporting, and processing costs are costs to market the production. The **deduction of such costs from royalty payments to Hawkins is specifically disallowed under Lease provision 3.(e)** which states royalties are free from expenses, except for taxes."

"Capitan **did not comply with the no deduct Lease provisions** by deducting oil gathering fees, minimum volume commitment fees, and transportation fees from oil royalties."[103]

Accordingly, Defendants' Motion to Exclude Gann and Downing is **GRANTED** as to the bolded legal conclusions. (Doc. 51).

On a different note, the underlined portion concerning "implicit" deductions do not appear to provide a legal conclusion. It does not denote a legal obligation or answer a question of law for the Court, but instead appears to interpret the meaning of an "indirect deduction." The admissibility of this statement, again, significantly depends on the Court's resolution of the Lease's ambiguity and is therefore inappropriate for disposition at this time. Defendants' Motion to Exclude Gann and Downing is **DENIED** as to the underlined statement. (Doc. 51).

Defendants also request exclusion of the term "embedded."[104] This term does not appear in the quoted opinions. Defendants' Motion to Exclude Gann and Downing is **DENIED** as to this term. (Doc. 51).

Plaintiff's Response to Defendants' motion includes an argument that the Martindale Report was created to calculate damages. Thus, Plaintiff claims, Gann and Downing necessarily had to rely on the language of the Lease to make these calculations and request that the motion be denied to the

---

103. (*See, e.g.*, Doc. 52-1 at 9, 15).
104. (Doc. 51 at 9).

extent that the Martindale Report seeks to explain damages.[105] Defendants agree that this purpose is proper and request that the opinions in the Report be limited to those regarding damages.[106] Additionally, at the June 21 hearing, Defendants indicated that they only challenge opinions on Pages 9 and 10 of the Martindale Report proffering legal conclusions, and that they would be satisfied if the Court allows the Martindale Report's other opinions on damages.[107]

Therefore, to the extent the Martindale Report and the rebuttal reports speak on damages *beyond* the bolded and excluded legal conclusions, as the parties agree, they should be allowed. Accordingly, Defendants' Motion to Exclude Gann and Downing is **DENIED** as it relates to any damages opinions the Martindale Report and its subsequent rebuttals may contain. (Doc. 51).

**3.** *Ipse Dixit*

Defendants also assert that Gann and Downing only offer their own *ipse dixit* and "fail to include any basis for their legal conclusions regarding the meaning of 'direct' and 'indirect'" in § 3(e).[108]

Courts are not required to admit "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Assuming the Lease is unambiguous, expert testimony concerning only industry-specific or specialized or technical terms can be admitted. It is not immediately evident that any of the challenged Martindale Report opinions are based on such knowledge, skill, or other expertise of Gann and Downing, and Plaintiff does not suggest such in its Response.

With that being said, the Court reiterates again that all testimony will be heard by the Court as the trier of fact, and not a jury. At a later point in the litigation, the Court can give the admitted testimony of Gann and Downing the weight it deserves, and can reconsider Defendants' *ipse dixit*

---

105. (Doc. 54 at 4).
106. (Doc. 57 at 1).
107. (Doc. 64; *see also* Doc. 57 at 1).
108. (Doc. 51 at 6).

arguments should they be reasserted. Therefore, Defendants' Motion to Exclude Gann and Downing is **DENIED** on this ground. (Doc. 51).

### III.   CONCLUSION

For the reasons stated above, with the few enumerated exceptions, the expert reports submitted by both parties appear to be sufficiently reliable, helpful, and relevant to be admitted at this stage. Should the Court conclude otherwise after determining whether the Lease is ambiguous, it can, as the trier of fact, thereafter disregard or exclude any opinions which it sees fit.

Accordingly, Plaintiff's Motion to Exclude Adair and Banschbach shall be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 49). The Motion is **GRANTED** as to Banschbach's challenged opinions concerning whether Capitan was "correct" in remitting certain royalties as well as those opinions concerning whether Capitan "should have," "should begin," or other similar language pertaining to the deduction of certain fees. The offending language is hereby **STRICKEN**. The Motion is **DENIED** on all other grounds.

Further, Defendants' Motion to Exclude Gann and Downing shall be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 51). Specifically, the Motion is **GRANTED** as to the enumerated bolded legal conclusions in the Martindale Report and any subsequent rebuttals. The Motion is **DENIED** to the extent any remaining opinions speak on damages and on all other grounds.

Lastly, Defendants' objection to Plaintiff's Appendix Pages 099–116 is **SUSTAINED**, and the relevant appendix pages are hereby **STRICKEN** from the record. (Doc. 49-1 at 21–38).

It is so **ORDERED**.

SIGNED this 27th day of June, 2023.

DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE